May it please the court, my name is Gautam Dutta and I am counsel for appellants Michael Chamness, Daniel Frederick, Rich Wilson, and Julie Scalacchi. This case boils down to a simple issue. Senate Bill 6 created what's in effect a speaker's corner for political candidates. When it comes to the ballot because of that, the state cannot now favor certain political opinions over others. And here's where we see the problem that arises. As the court knows if you say under this new system that you agree with the political ideas of a state recognized party, for example a democrat or republican the ballot will simply say that you prefer that party. But if you want to say that you agree with the political ideas of a non-state recognized party be it coffee party, tea party, the foreign party, what have you, the ballot will falsely say that you have no party preference. Because such viewpoint discrimination violates the elections clause, the First Amendment, and the Fourteenth Amendment, we seek declaratory relief so that the legislature can fix the problem. But my understanding is that although you mention in passing this problem of not being able to name the party, that's not what you're asking for. You're asking to be able to say independent. In our case, Your Honor, we wanted to say independent. However, that would not fixing that problem alone would not fix the constitutional problem. Because this law does not even, as the court knows, does not allow you to say independent, which is what we were seeking. But there are other candidates who most likely will seek to state the name of their small party. They're not here, but we do have standing to raise this issue because we are talking about the issue, the general issue of being silenced on the ballot. In a future election he might. As Your Honors know, he has already run in two elections, a state senate election and a congressional party. Well, it's important to me which way the case is framed, and I understood it to be totally framed the other way. You haven't made arguments, really, about the question of whether you can put a party name on as opposed to independent. We've made both arguments, Your Honor. It probably is a question of emphasis. It's true that we emphasize the independent angle aspect of the argument, but in our brief, I think in pages 36 to 38 of our opening brief, we spoke of our claims brought under the Elections Clause, and similarly in our reply brief in pages, I think, 16 and 17, we again repeated that where basically under the Elections Clause it's clear that when it comes down to stating a political opinion, which is what this ballot is now reduced to, one should not be censored. That is, if you have an opinion that you like Party X, you should be able to say Party X. If you have an opinion that you like Party Y, you should be able to say Party Y. But you can't. These are not parties. The Tea Party is not a qualified party. If there are enough people who want to identify themselves and have a certain ideological outlook, I don't know what the requirements are, but I assume they could be met, and then he could say Tea Party or Coffee Party. I didn't think that this case was about that issue. In other words, I don't think it is. The State has made the barriers to becoming qualified parties such. That's not what this case is about, is it? It's about both parts, Your Honor, the right to say you're independent and as well the right to say whatever party you choose, although as Your Honor has made clear, that's not specifically what we sought in this case. But Your Honor brings up a very critical point, which will obviously be raised by my talented opposing counsel. The heart of this case goes down to the issue, what's called the distinction between qualified and non-qualified parties. And we would vigorously argue that this no longer applies here under this system. And to do that, I just have to if you would, with the court's indulgence, I just want to go through a quick before and after of the law, because I think that would become very clear. Before our candidates got on the ballot in two different ways. If you were part of a ballot qualified party, be it Republican, Democrat, whatever have you, you would run in June as a member of that party. And under the rules, you had to have been a member for one year. And whoever finished first would go on to the November general election as that party's nominee. Okay. Now that system gave the voters the assurance that this person whoever ran in the major party, in the ballot qualified party, had been a member for one year. And so that way they could know that there are no Johnny Kamalakis. Now... And they also were the nominee of the party. Yes. They were the nominee of the party. And then when in November, voters would know that this person was the nominee of that party. Okay. So that's before. Now we go to after. This applies for all state and federal candidates except for people running for president, which we'll come back to in a moment, I'm sure. There, now, all candidates get on the ballot the same way and at the same time. This, we're only talking about in June. So basically you have to get... Primaries. Excuse me? Primaries. In the primary. In the June primary. And here there's a fundamental change because, first of all, in the label, it no longer says like, you know, let's say it's, you know, in this case, if my name's Gautam Dutta, it would say Gautam Dutta, I don't know, Republican or this or that. It would say party preference, you know, Republican. Or no party preference as in the case, as it was in my client. So that's, so that's one change. So the other two changes, as your honors can, about, what can surmise are that the voters no longer have what's called quality control for people coming from the ballot qualified parties. They do not know how long a candidate has been a member of that party. For all they know, a party, a person could have just changed his party, his or her party affiliation at the very moment that he filed his papers, at the very last minute. So the final, and needless to say, when it comes to November, there are no more party endorsements for candidates for the November ballot. And the Supreme Court made that clear in Grange as well. So that's the biggest change. It no longer matters when it comes to purposes of this ballot label, whether or not someone is from a ballot qualified or non-ballot qualified party. Because that was a label that denoted how someone got on the ballot, but now they all get on the ballot the very same way. And for that reason, we would pose it that this has created what's basically a speaker's corner. Now in Washington State, whose system recently came before this court, what's very notable is that that state's system did not have this problem. They let every candidate, they gave every candidate 16 characters to describe their party preference as long as it wasn't obscene. You did not have that here. Instead, here, if your preference, if you happen to have the wrong, quote, wrong political opinion, then you're muzzled. You're forced to say you have no party preference. That is just fundamentally different from a system that had been approved by this court, and as Your Honor's know. I'm really having problems with the fact that you've switched gears so entirely from your arguments in the brief. In the sense that, and just to lay out my hand, I mean, I find the fact that you can't name your party somewhat troublesome, but that isn't what you were arguing about. You were arguing about whether you were allowed to say independent versus party preference none, and you're not making that argument. Okay, and I will now, Your Honor. What if, if I can piggyback on that, what if, which candidly is the case with me, I just don't see semantically the difference. Number one, well, I've got another question, but answer hers, and maybe mine. Okay. So going to the independent argument, this, in Rosen v. Brown from the Sixth Circuit, the court held that you cannot allow a candidate, candidates from ballot-qualified parties, Republican, Democrat, whatever have you, to state their party's name on the ballot while banning candidates who want to say independent from saying anything. They force you to say blank. Right, okay, they're not doing that. That's not happening here. But they are banning you from saying independent. Now, that word is very important. As the Massachusetts Supreme Court noted, it carries a word that was unenrolled that was struck down. And the court held that unenrolled, which we argue is virtually identical to no-party preference, was insufficient. It deprived not only the candidate of a means to communicate his or her message, but deprived the voters. Is that the case where you can say anything you want to except independent? That's correct. You can say anything you want to. The thing is, you could have put no-party preference there, but they basically said no. This word carries that much value because, and to paraphrase the court, voters who are seeking a candidate who was independent could find none. It was that important. And the holding there is that unenrolled, which is the same thing we argue as no-party preference, was constitutionally insufficient. And you had to allow candidates to state they're independent. So that's point one on the definition. Now, I know that the other side might say that this term might be misleading. However, this is a term that's been enjoyed by candidates from, that was enjoyed by good candidates in California from 1891 to 2010. And during that time... that there was a process for getting on the ballot which was bypassing the primaries. And it was called an independent petition. And so it had an ascertainable meaning at that point. At that point, it did. Yes. Yes, Your Honor. And there's always a tension here because... But it doesn't have that ascertainable meaning anymore because there's no requirement to even to do that. That's correct. Except as we would notice on the presidential side, which is now untouched. And our query is, you know, we would argue that this already shows that it's different. If it hadn't been, you know, why would you have two separate things? Because now it's very confusing. If you're running for president, like Michael Chambliss, and had Michael Chambliss's values, you would be able to say you're independent. But if you're running for Congress, which you did, and had Michael Chambliss... But you couldn't be able to say you're independent unless you passed the criteria for getting on the ballot as an independent. That's correct. Right. You couldn't just say you're independent before either. Yes. So it's not the same thing. It's not the same thing, but you always look at things from the perspective of the voter. Let's go back to Buckrock in that Massachusetts Supreme Court case. There, one could definitely argue that unenrolled is technically accurate. That is, that someone was not, quote, enrolled with a ballot-qualified party. But the state Supreme Court there said that was not enough because what, you know, as to paraphrase Justice Rehnquist and Roberts and Justice Alito, you know, the ballot is the last thing the voters see before they make their choice. This is really important real estate. And this is a real estate that the state has a monopoly over. So when, what a voter sees right before he or she votes is critical. So that's why, even if something's technically accurate, if it's something that would mislead the voters, then it's something that courts... The only possible argument as to why it misleads the voters is that when you say, the current version is party preference none, right? Party preference, Democratic party preference, Republican party preference none. And the only possibly misleading thing about it is that the person might think, if they didn't know that parties meant qualified parties, they might think you didn't have any party. Yes. But doesn't that run right into the more recent Supreme Court cases that say that you just don't assume that kind of ignorance in the voters? I mean, that the voters... I mean, since, in fact what it doesn't mean, that it means no qualified party, and that you can assume that's what the... and you can explain in whatever way you want to the voters that that's what it means. Well, two thoughts, Your Honor. One is that we believe that it's been enshrined not only by the Sixth Circuit and well, okay, we're going to the definition of the word. We believe looking at the Baccarat case, that doctrinally it's been established that independent carry has a very unique value that has been proven in American politics. So that's point one. Which actually is actually inaccurate, in a sense, because he isn't independent. He's a member of the Coffee Party. Well, it's a diffuse word and that's how he felt comfortable describing himself. So it's, you know, no one's been able to especially define what independent means, but what people do know is it sounds good to voters and it's attractive in that sense. Well, why can't... I don't understand why the word independent is so special. Why couldn't I insist if I'm truly not a member of any party, why couldn't I say... I want it to say next to my name beholden to no party. Why don't I get to say that? Well, the state I mean, the state... I mean, look, we fully recognize the state has an interest in regulating and introducing some order to the process. What's so special about the word independent? If we say you can insist upon the label independent being placed next to your client's name, what's the line that stops it from saying okay, well, actually, I'd like something different because it gives it a more positive connotation to my campaign. Well, we would say that... okay, I want to make one thing very clear. Under the old system, we would completely agree that there are limitations because there we would completely agree that, you know, you could start to say... someone could say in line with Libertarian Party v. You that, you know, you either say you're part of a ballot-qualified party or if you've been... if you qualify for the ballot by the independent process that you're independent. We would agree that that would be permissible that that's constitutionally liable. You're saying in this new system all bets are off. We can just... I can insist upon whatever label that I think is most positive for my candidacy on the ballot. But the state can impose some limitations on it. For example, as in Washington, they have a space limitation  free-hanging right, but it can be reasonably regulated. Beyond that, you're saying there are no limits on the label I can insist the state put next to my name on the ballot? Because of the way they've changed the system, that's correct. Because now you're talking about political opinion, which was noted by the justices in Doe v. Reed, implicates a First Amendment right. It's no longer a question of whether you're a, quote, bona fide member of a qualified party. Here it's just a question of what you're saying you believe in. Whether or not you really sincerely believe it or not, it's irrelevant. You've held squarely, and maybe the Supreme Court as well, that the ballot's not a public forum. You don't get to engage in campaign expressive activity on a ballot. That's not what it's for. It depends on what the form of the ballot is. What we're arguing here is that because of this new form of the ballot, that you are now constitutionally required to allow for more expression. As the court noted in... the Sixth Circuit noted in Rosen and has been in Anderson and other cases, once you open up the ballot to content and the state manipulates the content of a ballot, it must be... it's hemmed in by requirements. Isn't the California approach an attempt to regulate to the content of the ballot as little as possible by specifying a very mechanical statement? In other words, it's party preference, colon, and you have a choice of six, and if you don't choose any of the six, the answer is no. That's really the least amount of regulation in a way because you're saying you can only convey one piece of information, i.e., which of the six parties do you prefer, and if you don't prefer any of them, then it's no, and that way you're not skewing the deal at all as long as you are willing to assume that people adequately understand that no doesn't mean no party. It means none of the qualified parties. Well, that's, I think, where the difference lies. I mean, yes, we're aware of the case law that says that one assumes a well-informed voter. What we would note, though, is that even though we believe that under Grelick and other cases we had no obligation to provide evidence, there was an article in the Venice Argonaut just locally here that noted that my client had, quote, refused to divulge what his political beliefs were, and this is from a newspaper. It's just one article by a reporter, but, you know, usually one puts some thought into it, and more thought, I would argue, than someone who's looking at the ballot or absentee ballot right before voting, much more thought. Can I ask a separate question? There are a bunch of intervention issues being discussed in this case, and they don't matter. Is that correct? Well, we are of the view that they do matter, but, you know, if the Court wants to, would like to discuss them. I guess what I want to know is how could the – the fact that you didn't argue them seems to me to confirm my impression that you either win the case or lose the case, and whether these other people are part of it doesn't make any difference. In that sense, yes. We do believe that they do not have a mandatory right to enter into this case, but obviously we want to focus on winning our case. But that's also true with regard to your – the other person that you weren't trying to win. Mr. Galacki? Yes. It's true of him. It's true on both sides that it doesn't matter whether these people are in or out. Yes, but although – yes, that is correct, Your Honor. But with respect to the intervention of right, we believe there's an important point there, but, you know, again, I want to take up more of our time. And finally, the fact that you didn't argue the – the ballot counting seems to me to be the better part of valor because the change in the law – not the case, but the change in the law – The law changed, and subsequently the two states, Arizona and Alaska, that had been considering top two systems decided not to pursue it. So we are not – just to be very clear, we are not pursuing that. Thank you very much. And if I could reserve time for rebuttal. Thank you. Good morning, and may it please the Court. George Waters, Deputy Attorney General for California Secretary of State. Deborah Bowen. Can I ask you just to clarify one tiny thing before I get into your presentation? Absolutely. Under the new revised statute, are you now required to state party preference, none, or can you still leave it blank? You have two options. You can say party preference, none, or party preference, Democratic. Those are the two options. But can you leave it blank if you don't – that option's been eliminated. Correct. Let me begin by clarifying – Can I ask a clarifying question? Go right ahead. I'm here to answer questions. I'd be delighted to answer questions. This is a completely ministerial question. How are you dividing time? Dividing it 15-5. 15 here, 5 there. That could vary depending – maximum 15 for me, Your Honor. I want to begin with a point that came up during the appellant's argument here, and that was what appellant was seeking in this case. Up until now, appellant has been seeking to appear on the ballot as an independent. That is in paragraph 1 of the introduction of their appellate brief. That was the course of the proceedings in the trial court, and that is how we have prepared our opposition brief. Up until now, the claim has been a claim to appear as independent as opposed to no party preference. And I'm going to address my comments to that. I think to go a little bit further with the appellant's claim, up until now, I know the Court is very familiar with the First Amendment and its interaction with elections, but I do want to stress at the outset that the Supreme Court has made clear that there has to be considerable regulation of elections to prevent chaos. This is one of those measures. Plaintiff's presentation, the appellant's presentation so far, has been purely as a matter of law. On page 22 of their appellant's brief, they have this statement. Plaintiff Chambliss does not need to produce any evidence to prevail for banning the ballot label of independent imposes a severe burden as a matter of law. I just want to clarify that, as that is how the case has been tried up until now. So I think the issue before the Court is, is that statement true? As a matter of law, is the term independent, pejorative, deceptive or anything else? And I just have to say there is no evidence in the record on that. Plaintiff has offered none. You said the term independent. You mean the term no party preference? No party. Well, no. Yes. Pardon me. Yes. No party preference. The appellant has not addressed that issue. It has not gone down that path. The whole question is, as a matter of law, is that pejorative, deceptive or for some other reason constitutionally not accepted? I gather their best shot at an argument is it's inaccurate. To make them say that they have no party preference when they do have a party preference, I don't know exactly how independent helps. I guess the argument would be that independent means independent of the other parties, but no party preference means they don't have any party preference. Yes. And I think, actually, I'm going to go down the same path that you have already articulated here. In California, California has regulated parties for years and there are ballot qualified parties. I want to tell you that, I mean, once you start going down that line, I start to have problems because I read the Libertarian Party, which is your bedrock case very carefully and it is, the reasons it gives for doing this almost all have to do with the fact that the representation on the general ballot is that this is the candidate of that party and that they're entitled to limit the number of parties that make that representation to the ones that actually had a nomination process and did nominate parties and for the Libertarian Party to be coming in after going through an independent process, which was not at the behest of the Libertarian Party and then to say, well, this is the Libertarian Party, they say it just is completely inconsistent with our whole system. Now, with the new system, I think all of the arguments in favor of having the qualified parties at least have to be very different and they certainly can't rest on the conclusion in Libertarian Party or on the confusion issues. I think you've got a problem. I just don't know that it's this problem. Well, let me begin with, very briefly, it's not this problem. But to go beyond this problem and to address the concern the Court just articulated, I want to stress that California makes it easy for a party to become ballot qualified. You need one percent registration of the vote at the previous gubernatorial election. On the scheme of things among states, this is at the easy side of the spectrum and California has a long history. There were six at the time this case was filed, there were six ballot qualified parties. There are now seven. But they're not nominating anybody now. They're not. But what I'm saying here is that the burden for them to be able to assert their name on the ballot is low. And secondly, in one sense, they are nominating. They do nominate for president. There's a whole different system for president because after California nominates its presidential candidates, they go off to what is essentially a private event, which is a party convention, at which the parties in their private capacity then take the input from California and elsewhere, nominate whoever they want, and then they send it back to California and California puts that name on the ballot. But there are still independent nominations for president and there is still the entire party apparatus, party qualification status for the presidential election and also for party central committee, which is... And I assume the orange signs in the advertisements indicate whether you are the endorsed Republican, rather than simply somebody who considers himself to be a Republican. I would assume. I mean, if I were an endorsed Republican, and I thought it hated me, I would certainly... But that does not appear on the ballot. It does not. No, no. The endorsements... What appears on the ballot just would be Democratic or Republican. I mean, it's not endorsed by, but I mean you are... The presidential system is entirely separate from this top two primary system. But for the top two primary system, there is no endorsement that appears on the ballot. None. Right. No. Correct. My point is in terms of informing the voter who the quote, real Republican is, I would assume that maybe it has nothing to do with this case, but there's plenty of other alternatives for voters to find out  There are slate mailers. There's a campaign. There's all that, everything that you and I see on TV and elsewhere. Yes. There's no limitation whatsoever. I read something in the briefs or the record that suggested that in addition to the qualified parties, there are some sort of registration system where parties can register to sort of be candidate qualified parties. Is that right? Well, yes. There's... There's 17 of them or something? Yes. I believe there are now... Let's just assume for the moment there are now seven qualified parties. To become a qualified party, you file papers with the Secretary of State. And you become a political organization. And that just tells the Secretary of State that you are in the process of soliciting, I think, one of two things. One would be registrations in your political organization of at least 1% of the total number of votes at the last gubernatorial election. And if you reach that point, then you become a party. Or you can also do... I think it's 10% of the voters at the last gubernatorial election. They don't have to enroll in your party or register with it, but if they sign some kind of declaration supporting you, and you come up with 10% of that, then you become a party that way. So there are 13 of these organizations that are at the time the briefs were written were seeking to achieve party status. Correct. And they're called political organizations. So there's some sort of evidence of them in the roles of the government and are there... Is it counted how many people vote for them or only later? No, no. It's not counted how many people... The information is available on the Secretary of State's website. You will find the list of entities seeking to become parties. But no, votes for them would not count. They're not tabulated. They qualify by doing voter registrations or some sort of declaration also. Here's another question I wondered about. I gather that one... From what I could tell, the one concrete difference that's at all relevant to this case between qualified and not qualified parties, other than how they have to show up in the ballot, is that people can register as one of the qualified parties. Correct. And in order to put their names on the ballot they have to be registered for one of those qualified parties. Correct. Has anybody checked that? Whether they're actually registered with... Yes, indeed. I mean that's part of what Prop 14 SB 6 did is that it allows in theory a candidate to the day before they file their nomination papers to change their party registration. I mean you could become a Republican, Democrat, whatever. So you do file those papers with the Secretary of State and it is then public just to deal with an issue about whether that might be pulling the wool over people's eyes. This is all public. People know what a candidate has been registered, what party they've been registered with for it's either the last 5 or 10 years. If a candidate were to at the moment before they filed their nomination papers change from one party to another, I think they have to assume that that would become an issue in the campaign. It is public. It's on the Secretary of State's website. So I mean the Secretary of State doesn't do anything after that, but in case the press or anyone else wanted to make an issue out of that, or the opponent wanted to make the issue out of that, the ammunition is there. Can I ask you about a different issue? Because put aside the plaintiff's insistence that he gets to put the label independent on the ballot. Just put that aside. I am troubled by the compelled speech nature of being forced with no other option to have this party preference none label affixed there. It seems to me there's a real distinction in the case law, at least that we have up until now, between telling a candidate you are forbidden to place your preferred label on our ballot versus forcing them against their will to have some message attached to their name. And that's why I asked if leaving the space blank is still an option. When you said no, that really gives me a lot of concern. Because I find that particular label it is misleading. It's misleading even to somebody like me. I've lived in California all my life. I wasn't aware of the distinction between this qualified party and non-qualified party thing until we got into the briefs in this case. And I guess I'd like to hear what the state's interest in is even under the relaxed non-strict scrutiny standard we apply, the state still has to have some legitimate interest in forcing this label onto an unwilling candidate. And I haven't seen what that interest is yet. Indeed, Your Honor. And I do think there might be a disagreement at the end of the day on this. But I do think that the term party in California has a meaning. It is one of the parties that is state-recognized and that appears on the ballot in which people have been exposed to since forever. This is an issue not raised here, but if people I don't know if anybody knows whether there is a coffee party. I've been cited to a website. There are 13 organizations that the state knows about that you can't put on the ballot. Say that again, Your Honor. There are 13 organizations that the state knows about. We don't know if coffee party is one of them. But there are 13 and you can't put them on the ballot. But they're not here. And also not here is anybody who wants to put nothing under their name. Correct. I'd actually like an answer to my question. What's the state's interest in compelling a candidate to have this particular label party preference none attached to their name? I think the state's interest is in the nature of conducting orderly elections and presenting the voters with information that the state considers important and which has been traditionally done. And that is that I think you can assume that the ballot labels for the parties that are ballot qualified they are known to voters. The other labels are I don't know, a bottomless pit. Who knows. But I think there is an informational interest. What case do we have where, again, not talking about forbidding a candidate to put their preferred label on the ballot, but where a state is compelling someone to have a message attached to them that they don't want. What case do we have that says that's okay? I don't know. But let me just say that California traditionally has, I mean, I assume, I think one could assume that there are candidates who did not want to be, who were described on the ballot as independent who would have preferred to have been described some other way. But that's what he's asking. He's asking what if you just don't want to put anything? What if you want to put nothing? I think that, I think, well traditionally candidates have not been allowed to put nothing. And so the question now is what's the state's interest in just having a blank? What's the state's interest, as between the two options, of you're being forced against your will to have this label party preference none versus having nothing on there. I can't think of why the state would have an interest in denying you the ability to say, you know what, if you're not going to let me put down coffee party because it's not qualified, then just leave it blank. And the state is saying, no. We're going to force you to say party preference none. Well, your honor, all I can say to that is that California believes that the meaning of the phrase party preference none has a meaning within California and means that this candidate is not affiliated with a major party. How about could the state say okay, you don't like party preference none. We'll force you to say candidates such and such affiliated with a party not deemed qualified by the state of California. We could say that? That's perfectly accurate. I assume that there are a number of things the state could do. You think that would be okay? Your hypothetical again is, I'm sorry. Affiliated with a party not deemed qualified by the state of California. You know, I think that would raise issues similar to the Scarlet Letter case about whether that was pejorative. And he's saying that this label that you're forcing me to put on there has the same effect on me. But I believe there is no evidence, and I think there's no reason to believe that the label is pejorative. It may not be what they want, but it is not, there's no evidence that this label costs them votes. Okay. You are using up your opponent's, your colleague's time. Thank you. Thank you very much. May it please the Court. Chris Scannell for Intervenor Defendant. Before I turn to the merits, I just want to correct one comment from before. Judge Berzon, you asked whether the political parties were allowed to show their endorsements in the ballot. They are permitted to provide a list of candidates that they've endorsed to the county registrars and have those printed in the back of the sample ballot. Sample ballot? Yes. But a sample ballot that is mailed to all voters in advance. Not on the ballot? Not the ballot itself, no. But it is intended to be identical in most cases, to provide guidance in the format of the ballot within it. So they are enabled by state law to provide their endorsements directly to voters. To the qualified party? Yes. Now, with respect, I'm just going to focus on this issue because of plaintiff's acknowledgement that the intervention was not really an issue at this point. And there are just a few points I want to make. One, regarding the question of whether or not no party preference or party preference none is pejorative. The real key here is that plaintiffs have presented no evidence. It was their burden, as the district court recognized. They point to Rosen v. Brown and say, well, the fact that I wasn't allowed to use independent in that case meant that it harmed my candidacy. What they gloss over is the fact that the plaintiff in that case provided substantial evidence of that, including the testimony of three expert witnesses. And so that's not present here. There is no evidence whatsoever that is pejorative or harmful to candidacy. Let's say we accept that. But what's the State's interest in forcing that label on an unwilling candidate? What's the State's interest? Why make the person have that on there if they don't want it? Your Honor, it's simply a way of indicating that they're not registered with any of the or affiliated with any of the party. So what? Just leave it blank. What's the State's interest that says we're going to compel you to speak when you don't want to? It's no different from in that particular respect, this system is no different at all from what existed prior to Proposition 14. Before Proposition 14, candidates were compelled to use the label independent. Many of them objected. That's why we have the Libertarian Party case. That's why we have the Lightfoot case. But they didn't object in favor of nothing. They objected because they wanted to put Libertarian Party, which would have indicated that the Libertarian Party had nominated them, and it hadn't. Yes, Your Honor, but the real key point of those cases is that candidates are not given permission to just choose whatever they want to have on the ballot. Well, as I indicated, I have real problems transposing the Libertarian Party case to this situation. And it seems to me that the problem is relevant to the current problem even with regard to the independent versus no party preference to the degree that the no party preference has to be understood to be no qualified party. And no qualified party it seems to me has to have some function in the system in order for the State to force people to use it. And I don't really understand in the current system what the fact their party is qualified or isn't qualified has to do with how somebody appears on the primary ballot. Well, Your Honor, as much as they are different systems, I don't think you can separate the system in the sense that in many elections you're going to have both on the ballot. And so there is still an interest in distinguishing between qualified and non-qualified parties just as there always has been in the presidential context. And that's right on all fours with Libertarian Party. And having a different system where they can pick whatever they want with respect to these voter-nominated systems risks creating confusion. Well, everybody keeps using this confusion word. What's confusing? I mean, the only argument that I've heard as to confusion is, well, people can start, you know, calling themselves all kinds of weird things. But there are a group of parties that are actually registered with the State. Right. First of all, as Your Honor has pointed out, none of those parties are here. Right. But again, the fact that these parties have gone through the hoops of getting themselves qualified, they have gone through all the steps, people know what they are, they are known quantities, actually those labels have some meaning within State law. They are conveying... Well, they used to have a meaning within State law. They don't have much left except for the presidential election. Well, that's a fairly significant meaning right there. But they also have the ability to put their endorsements in the ballot. They also have the ability to communicate directly with the voters through mailing labels that the State provides. There are a number of benefits that continue to be available to those parties that are not available to the non-qualified parties. And they have a very... they continue to have significance within the context of State law. That's why the field court specifically said it regarded Libertarian Party and Lightfoot to still be applicable to this circumstance. I find them very persuasive in that regard. Well, I would also note that the 11th Circuit has come to the same conclusion in an open primary context. What case is that? Dart v. Brown. We provided that in our Rule 28J letter. Yeah, and there, of course, you had the option of leaving it blank. Right. That is true, Your Honor. No, actually, I take it back. That's not true. You didn't have the option of leaving it blank. You had to leave it blank. You didn't have a choice. And it's the same... There was no compelled speech that the State was forcing on an unlawful candidate. There was compelled non-speech in that case. It was the same in the sense that the State was still telling you what would go on the ballot, and you had no choice in that. It was also curtailing your right to express yourself and make your views known. That's right. It was saying that unless you were registered with a qualified party, you got to put nothing. And I think it's useful to contrast that case, actually, with Rosen, because they were the same issue. You know, can you make me, if I'm not a member of a qualified party, put a blank on the ballot? Rosen said no. Dart said yes. And the key difference here is the complete lack of evidence in Dart. Putting a blank. That's not compelled speech. I'm sorry. I know that's maybe just semantic. But compelled speech is being forced to say something you don't want to say. If you're just being forbidden to put your preferred label, that's just you're being forbidden to speak. It's not compelled speech to say we've got to leave it blank. Well, I think they're two sides of the same coin, Your Honor. You know, being forbidden to speak, on the one hand, or being compelled to speak, from a First Amendment perspective, they're two sides of the same coin. It's still the government telling you what can go with your name on the ballot, regardless of whether it's a blank or whether it's a blank. It keeps me from telling the voters what my views are. Oh, that's right. But, of course, the Supreme Court has said that the ballot isn't a mechanism for distributing political propaganda, essentially. It's a way of electing voters. And that's why there's a lower standard here than there would be in a non-public forum, a non-public context. You know, there are numerous cases which we've cited where the government regulates what is permitted to be on the ballot, including the party labels. You know, we've cited the Dart case. We've cited Libertarian Party and Lightfoot. But Schrader v. Blackwell was a case in they came after Rosen in the Sixth Circuit, said that, you know, in that case, instead of a blank, they permitted the candidates to use independent, but nothing else. That was acceptable. You have cited a lot of cases that seem helpful for us, but is there a case in which a court has upheld the forced affixing of a label that somebody didn't want? Not the case where, you know, independent is being required to put on there, but someone says, but I really prefer libertarian. But somewhere, a case where someone said, I'd rather just have nothing, and the state says, no, you're going to take this. And a court has said, yeah, the state can require you to do that. I am not aware of any case that says that, Your Honor, that's addressed those facts. I haven't found one either. Right. That troubles me. But I still think that there is no distinction in the sense that the state is still telling you what has to go with your name, one way or the other, whether it's independent or whether it – I mean, the Libertarian Party case, in the sense of compelled speech, they forced that candidate to say he was independent instead of Libertarian Party. He wanted to say something else. He wanted to say Libertarian Party. They forced him to say something he didn't want to say. And the California Supreme Court, they were even applying strict scrutiny, and they still upheld it. But because it was a completely different communication. The communication was what party has put you on the ballot. And the Libertarian Party did not put him on the ballot as a candidate of the Libertarian Party because it wasn't a qualified party. So it made sense there, and it makes a lot less sense to me here. Well, Your Honor, I go back to my prior point that there is still that distinction within California law with respect to the presidential elections, and I think you risk significant confusion in the voters' minds if you have one system where it's restricted and you use independent and it's limited only to the qualified parties, and then on the very same ballot you just let people put whatever they want on the ballot. And all of a sudden people aren't going to understand what the significance of those labels are. And, you know, that's exactly what the Dart case said. It said, you know, in an open primary context, there is a reason to provide the voters with some information about party labels, you know, to give them some information. Is the open primary even at the same time as the presidential election? Probably not. Well, in California just this past year they were. In 2012 you had the presidential primary in June. Primary, right, that's different. Right. Well, but then you also then had, I mean, this same issue could theoretically, depending on who advances, occur also in the general election. If you had an independent candidate, as did happen in a few cases in California in this last year. Somebody survives as one of the top two who is not a member of, who does not prefer one of the qualified parties. That's right. And that did happen in a number of congressional and state legislative races this year. Okay. Thank you very much for your time and your argument. We will give you one minute. Go ahead. Don't run so fast. Very quick rebuttal. Just I want to make three or four very quick points. One is that, you know, as we mentioned in our papers, the Secretary of State's office has termed the moniker no party preference not permissible. And, in fact, in the initiative draft of Prop 14, a draft that became Prop 14, the interveners had actually allowed candidates to say they're independent. So, you know, a question where the issue with where their problem with the word independent lies. Second of all, the issue of evidence. Cook v. Graylick, which is one of the leading cases, did not require evidence. And, in fact, if you look at footnote eight of Cook v. Graylick, it was referring to how they substituted in a new candidate to ensure that they were standing. And it checked. And at the time that they heard the case, the election had not occurred. So that candidate had not suffered the harm to date. I would also mention that we have provided evidence, even though we believe we are not obligated to. We believe it's the state's burden to produce evidence to provide a compelling reason to uphold this. Of course, our evidence being that there was an article that falsely reported the political beliefs of my client. When it comes to our claims under the Elections Clause, since we're talking about political opinion now under this new system, we believe that there is no state interest that can even be considered under this court's en banc ruling in Gonzalez v. Arizona. And, finally, with respect to the fact that now we have two parallel ballots, you know, you have the presidential election and you have everything else. And in one case, you have candidates who are allowed to say they're independent if they're not from the major parties. And in another case, candidates like my client, you know, are not allowed to say they're independent and forced to say no party preference. That does create, you know, a problem. It confuses voters. And this is something that is a very serious concern. People cannot get on the presidential ballot as independent just by showing up. Correct. You have to independently qualify. That's correct. Thank you very much. But it does create an equilibrium. Thank you, John. All of you in the case of Chambliss v. Bowen is submitted.
judges: Carr, Berzon, Watford